22-5235 Roger Hall and Study Solutions Results, Inc., Accuracy in Media, Appellant v. Central Intelligence Agency Mr. Clark for the Appellant, Mr. White for the Appellee Mr. Clark, good morning. Yes, good morning, Your Honors. John Clark, on behalf of the Appellant, Accuracy in Media, Inc., in this Freedom of Information Act lawsuit, the plaintiffs seek records on American prisoners of war held in Southeast Asia during and particularly after the Vietnam War was over. On January, I will endeavor to, we have raised five issues, I will endeavor to briefly touch on all of them, but before I do, I think it's important to look at the background of this case because it is relevant to the determination of the issues that the Appellant has raised. On January 23, 1973, President Nixon announced to the country that the Vietnam War was over and that all of our boys were on the way home. It was not true. A few days later after that, the Chairman, the Joint Chiefs of Staff, Admiral Thomas Moore, received a list of POWs to be released, and when he received that list, it was so deficient that he ordered an immediate halt to the withdrawal of troops from Vietnam. So this controversy is now 50 years old, and this lawsuit that we are here for is 20 years old. Over the course of the last 50 years, there have been two executive orders mandating release of these records, in addition to a presidential directive, which stated, entitled a declassification of POW-MIA records, directing all executive branch agencies to complete the review by Veterans Day of 1993. In 1992, the researchers determined that almost the exact number of POWs left behind, and that was 678. Now, we have raised a number of issues. One of the issues, probably the main one, is the existence of positive indications of overlooked materials. Under Valencia, a 1990 case, which relied on the 1979 case, Founding Church of Scientology, and those cases held that summary judgment is not appropriate, where the record raises issues of substantial doubt as to the search of positive indications of overlooked materials. I suggested to the court that here we have the positive indications of overlooked materials is just enormous. In plaintiff's October 2016 statement of material facts, it includes 153 statements that reflects really an enormous body of records, which have been identified or produced. When was the last Senate or House hearing on this topic? 1992 Senate Select Committee on POW-MIA Affairs. There's the exception for searching operational files that have been the subject of a congressional hearing. Does that apply even if the hearing was 30 years ago? It would apply. That exception does not apply unless it is an Intelligence Committee hearing. When was the last Intelligence Committee hearing? I don't think there was one. Then why was the court right to apply that exception to let you search operational files? Because the court found that the age of the records, the government could no longer justify it being operational records for records that were up to 60 or 70 years old. I'm sorry. My understanding was that the search was based on the 3141c3 exception. Is that not accurate? That is not accurate, Your Honor. I believe that. So you're saying that the search was authorized even though none of the statutory exceptions applied under Section 3141? Yes, Your Honor. I'm sorry. That exception did apply. In the last relevant hearing, the exception of operational files turns upon the subject of congressional committees or others. You said the last one of those was 1992. Your Honor, the court held that the exception was because we had presented evidence by members of Congress and Senators that the records should not continue to be classified, held in the operational records files. That was the exception that the court applied. In any event, the... Sorry. Is that in the statute? Where is that in the statute that that's an exception? Excuse me? Where did the statute... What part of the statute is the basis for allowing a search of operational files in this case? Testimony that the... What part of the statute authorized, right? CIA operational files are off-limits for FOIA unless you fall in one of those 3141c exceptions. Yes, Your Honor. And so just telling me that somebody said something doesn't answer that. What I'd like to know is where in the statute the district court's basis for getting operational files was. I thought it was 3141c3. I believe that it is, but... Okay, then I'm back to my question. If the last triggering event was 30-something years ago, does it still apply? Yes, Your Honor. The court... The district court ordered the CIA to search its operational records in 2017. So... After the last hearing? Yes. So there's... Your reading is that there's no time limit. As long as you can find somewhere in history a congressional investigation into the topic you're searching for, you can get into the operational files of the CIA full stop. I believe so, yes, Your Honor. Getting back to the search, I would like to talk about the search briefly. I've reserved two minutes for my reply. But even if they looked at the operational files, didn't they conduct a manual review after that and then still didn't come up with anything? Apparently, they said that they conducted a review, but there was no description of the search whatsoever with the exception of the terms, the search terms. One of the search terms was Vietnam. Over half of the voluminous evidence that we have submitted had to do with Laos. They didn't even search that country, apparently. Insofar as the overwhelming evidence of overlooked materials, the CIA provided the Senate with 1,400 firsthand live-sighting reports, which was returned to the CIA for processing, and they have produced not one of those. The Senate Select Committee said that there were 15,000 both first and secondhand live-sighting reports. They have produced almost none of them. Over the 20-year course of this lawsuit, they produced approximately 100 live-sighting reports, woefully inaccurate. I would also suggest that there's another item in this is the list of PNOK, primary and ex-of-kin, who authorized release of information on their loved ones. Now, the CIA had refused to do that. They said it was too much trouble or it was unruly burdensome. The district court overruled them and asked them, said, no, you have to search. Then later in 2019, the district court said, you have to search your operational records. Well, the CIA did not search its operational records for those 1,700 names. I would suggest to the court that if it was proper for them to search their non-operational records, it was certainly clearly important for them to search their operational records. And also, Your Honor, one of the issues that we brought forward was the motive for withholding the records that the CIA has. And I would suggest that the, that among the, Dr., Mr. Billy Hendon, Representative Billy Hendon wrote a book about this. It's a very informative book, and he entitled it An Enormous Crime. I think that every single piece of evidence that the CIA knew that men were left behind after the close of the Vietnam War inculpates the CIA in an enormous crime, that is, abandoning its own citizens. Vice Chairman Senator Bob Smith, whose affidavit is in the record, wrote that what is really at risk are the reputations and careers of intelligence officials who participated in and perpetrated this chapter of, this sorry chapter in American history. I see that my time is almost expired. Thank you. All right. We'll give you a couple minutes to reply. Thank you. Mr. Graham? Thank you, Your Honor, and may it please the Court. Graham White for the CIA. The CIA has produced more than 8,000 pages of responsive records during the course of this litigation addressing the fates of U.S. soldiers who went missing or were captured during the Vietnam War. The District Court held that the CIA's search of its non-operational files was adequate under FOIA, and plaintiffs don't challenge that aspect of the investigation. District Court's holding in this appeal. At issue here is a subsequent limited search of the agency's operational files for a specific subset of records that plaintiffs contend were allegedly shown to members of Congress in the 1980s and early 1990s regarding live sighting reports, aerial reconnaissance imagery, and records regarding rescue operations. Is there any time limit on that? I mean, the statute doesn't suggest anything, but given the sensitivity of operational files, I take it you all haven't argued that that was sort of stale in the late 19, like 1919, or sorry, 2019, to be relying on 30-plus-year-old hearings as a basis for probing into operational files? Well, the statute, the CIA Information Act does not specify a time limit for the age of congressional hearings that could provide a basis for the exception under subsection C-3. My understanding is also that the District Court ordered the operational files. Well, 50 years from now, someone could come look at your operational files again based on that same hearing. Provided that the files are the subject of a congressional hearing regarding a specific intelligence committee specified in the statute. The same thing here. I'm sorry? I mean, the same type of inquiry here. Right. Well, there's nothing in the statute that indicates a cutoff date for the type of hearing. I just didn't know if there's any sort of staleness concerns. We haven't raised that in this appeal, Your Honor, and the statute doesn't indicate any date range there. So given that you agreed to do this search, why on earth did you not search the word Lao? So the declarations provide a subset of the search terms that were used. There's a list of the full search terms used. So the declarations do not contain a list of the full search terms used. How would we know if the search was adequate without knowing what search terms were used? So the CIA has used this formulation describing a subset of the search terms that were used in previous declarations addressing operational file searches that it has submitted to this court in cases such as PORRA, BCIA, and DBACO v. U.S. Army. And in those cases, whatever terms we had by themselves were sufficient. So if we looked at the little subset you gave us and we go, there's no way that is remotely sufficient because you left out obvious terms like Lao or rescue, then what do we do? I don't know how we can evaluate the sufficiency of a search without having the search terms in front of us. So even if this court were to assume that the search terms listed in the declarations were exhaustive, the search is still reasonable because of how broad the terms that were used. No, they're not. They don't get Lao. You have Vietnam, but you don't get Lao. Lao is a big part of their FOIA request and it is a big part of this litigation. And you're just not covering. The terms that were used include POW, prisoners of war, MIA. Yes, but you don't have anything about the country of Lao. But the terms that were used would capture- We don't know that. We don't know since there wasn't a war in Lao that these words would have. Well, any operational files that relate to prisoners of war, POW camps that reference the specific congressional committees- They have been called something different else in Lao. I don't understand. Why wouldn't you search for Lao? You said you wanted to do a nice wide, broad search. Maybe that's one of the other terms that's not listed. If so, you can tell the court that. So you didn't do Lao. You didn't do rescue. You did House special POW, but not Senate special POW, even though there were Senate hearings. This is not remotely a broad list. This subset raises more questions and concerns. Then it does assurance. It suggests, in fact, that it was artfully narrowed, the searching here, if you left out the term. Was the term Lao one of the search terms or not? The declaration is not specified. I can't provide any more information. Okay, then I don't know how we could possibly think that this is a sufficient search. And you're supposed to search about rescue operations. There's no rescue. There's no recovery. There's no word like that. There's a follow-up on a Senate hearing as well as a House hearing. There's no- For some reason, you have House special POW. I don't know what that means, but you don't have any reference to Senate in here. I don't understand how this could possibly be, if this were the fullest of search terms, how this could possibly be adequate. Any operational files that addressed prisoners of war, POWs, MIA, that were searched during the course of the search, whether- No, no, they were called in Lao because there wasn't a war going on in Lao. It was a CIA operation, so it might have not been called prisoners of war. We don't know. Well, the declarations also use the terms missing in action, but I would also just point out- They're different, but that's different from a POW or someone who's in captivity. Well, look, the court standard for whether an agency affidavit and subsequent search terms are adequate under FOIA is whether- The list itself does not have to be perfect. It only needs to be reasonable. But it has to be reasonably designed to capture the scope of the search. This whole FOIA request was at least 50% about people who might be in Lao, and the Senate hearings were about that. The district court specifically said, this isn't speculation that there are records about Lao that would have gone directly to the CIA. I don't understand how you can come in here now and say that skipping Lao, there's no reason to skip it. Well, again, I'm not- The logical reason and the only reason to skip it is that you're not letting capturing certain records. So again, Judge Millett, the declarations do not state that Laos was skipped, but even if we were to assume that the terms here- Well, we have to assume, if you're not- These are the only terms that are before us. We can't assume there's any other terms. You would agree with that, correct? You can't assume there were other terms. You can't just assume you covered terms that we are deeply concerned about you omitting. Well, the declarations state that other terms may have been used-  Okay, yes. Are you asking us to assume the critical terms that were in there? No, what I'm asking the court to find here is that even if this list was exhaustive, it would have captured terms related to Laos because the terms that were here- I don't have any way for knowing that. There's lots of reasons to think that it wouldn't. What term is going to capture rescue operations? Well, prisoners of war, MIA, image. We don't know that things talking about rescue operations would use those words. Actually, one other thing too, when you use- And I just don't know how this works. If you have MIA, does that get MIA as plural? So the declarations state that different combinations and variants of those terms were used. But that doesn't tell me whether it gets singular or plural. Do we know whether- Because it seems like you have MIA singular, but POWS plurals. Prisoners of war, but I don't know about a singular prisoner of war. But I don't know if your computers automatically got plurals. But just saying that variations on those terms doesn't answer that question. Well, again, the CIA has used this formulation and other declarations describing operational file searches that this court held were sufficient. The cases where those terms provided to us were broad and adequate enough, this one's got gaping holes given the agreed subject matter of the operational file search. And this one has gaping holes, obvious stark holes in it, which the others did not. And we have precedent that says if the search terms are not- If you haven't shown that they are reasonably designed to capture the requested information, then it's not- Your search is not sufficient. And this is just- I'm troubled by the whole fact that there's a search of operational files to begin with, but you all haven't made an argument about that on staleness or anything. And maybe there isn't one. Actually, I don't know. But if we're there and you agree we're in, we're in FOIA land now. This is- This is- This has struck me as possible that this is sufficient. It leaves big gaping holes in what was asked for. In terms of that we have no reason to believe would capture that. So again, Judge Millett, the touchstone of this court's inquiry is one of reasonableness. And because we're talking about- It seems unreasonable not to have Lau in there when half the case is about people who might be detained in Lau. When those people might not be called prisoners of war because it wasn't a war in Lau. So again, Judge Millett, I would just reiterate that the declarations state that these broad terms were used because they would capture more specific information. Well, in fact, they say we think this will capture everything. Has never been the limit. I mean, we do have an obligation to look at the words you actually use and see if they make reasonable sense to capture the subject matter. And that's my concern on this one. And simply a vague reference to, oh, there are some other variations, but we haven't told you what they are. And there might have been some other terms, but we're not telling you what those are. Well- It's inadequate to me. You haven't asserted there's- that you need to do it in camera, that there's any security reason for not having done these other terms or not telling us what they are. So I don't know what we're supposed to do. It just seems to me that if you can come in and say, here's about half the words that are needed to cover the search topic and trust us, there were some other words and some variations, that our exercise here is an empty one. Well, again, Judge Millett, the language that was used in these declarations about different combination and variants being used, that is the same formulation that the CIA- It was- Those formulations aren't what win your cases. What win your cases are the substantive words that you searched in those cases. We've never said that, well, the substantive words seem to fall way short of what the FOIA request is seeking. But because you had this in-specific language here about we did some other stuff too, you win. You don't have a case that says that. That's not what is win your cases. We have talked about the terms themselves. Yes, no, I understand, Judge Millett. I would just reiterate that the terms that were used here, including image, I mean, again, we're talking about- No, that's what's crazy. You search CIA operational files, all your CIA operational files, and you come up with a few that have the word image? Yes, and there's a very good reason for that, Judge Millett. The first, there are a couple of reasons for that. The first is that the agency engages in a decennial review process, whereby every 10 years, agency staff review the content of exempted operational files to determine whether they still contain viable- In 10 years, you've only used the word, all the CIA operational files have only used the word image three times? So there's the decennial review process, right? And then also, the CIA does not hold onto these records indefinitely. It operates under a records control schedule whereby the agency's operational and non-operational files are only retained for a certain amount of time. And so when we're talking about records, like what is the universe of records from the Vietnam War era, from the 60s and 70s, documents that are 50, 60 years old, the universe is quite of such documents- But your search was of all files. That's the thing that flabbergasted me. My understanding was you weren't searching, you didn't have a special subset of operational files called Vietnam War era, that in fact, you searched agency-wide all operational files. That's correct. Whether it had anything to do with Vietnam or with what's going on in the world in the last 10, 15, 20 years. And you told the district court, by the way, that these operational files, time does not mean that these would not still include valuable and important information for the CIA. So that's the thing that's flabbergasting to me. That's the word image. Now, maybe you don't use image. Maybe that's what the NSC does. Maybe you use the words picture and photograph. I don't know. I find it flabbergasting that the word Vietnam at most turned up a few times, not because of the war, but because this is the CIA. So again, the CIA calls these files over time because of the decennial review process and the records control schedule. And the declarations do not specify precisely how many responsive records. We were told a few. And there's no requirement under FOIA for the CIA. We were told a few, right? That's correct. That's what I'm reacting. I take a few to mean three, maybe four records. Does a few mean something different? Well, the agency is not specifying how many potentially responsive records they were. Well, they told us a few. That has meaning. That's sort of a defined term, right? We understand what that means.  But as for a precise number, the agency is not— Well, if it was a dozen, we wouldn't call it few, would we? I mean, if the CIA would call a dozen documents few, I guess I'd like to know. I don't mean to be glib in my response. I'm just asserting that the agency deliberately did not provide the number of potentially responsive documents given the security issues here. We're talking about a surge of operational files indicating the number of potentially responsive documents. Again, we're talking about operational files that implicate the agency's current viable sources and methods. And requiring the agency to specify or to describe the number of potentially responsive documents with any specificity could pose national security concerns because— Well, then you can do an in-camera filing. I mean, right now you've asked, and I understand at this point we have to rule on the record before us, and that one is missing critical search terms. And the results seem—given there's some very broad words, but then there's an awful lot of words that would logically be in there that are missing, including particularly LOW and RESCUE. I don't know why it's a house in there, but not the Senate. I just don't understand the logic of this list that we've been given here, given the nature of the requests. And there may be good reasons, there may be explanations, but we don't have any of those. And I don't understand how we could say this is reasonable on a list like this, covers this much, when the search was supposed to cover this top. That's all we do is we match up the words to the topic. And usually there's enough words that they cover the topic, but there's no assurance on this list that anything having to do with LOW was covered. So, again, Judge Belight, I would just, again, point this court to declarations regarding operational file searches that it has held sufficient that do not include the exhaustive list of searches. That's what's always done for you is the words that were used. And again, I would just, I would respond that the terms that were used here would capture relevant information from LOWs, like POWs, image, that kind of information was not limited to any country. It wasn't limited to any date range. So we would just assert that it would capture information regarding LOWs. I see my time has expired unless the court has any further questions. Thank you. Thank you for this additional time. The CIA says that it searched its records for the last 60 years using the term Vietnam and came up with a few records. That's just not, it's simply not believable. And Your Honor, at the end of our brief, we- Have you ever filed a FOIA request with the archives? Excuse me? Have you filed a FOIA request with the archives? I have. Yes. Because they say they've accessioned a number of documents to the archives, that these are old documents now, and that's where they might be, or they might be with other intelligence agents. We have a case pending against the archives before Judge Lambert for these records. But that might be where they are. I mean, it's hard to know whether we're missing, logically missing responsive documents if they're old. They say a lot of these things have been accessioned elsewhere. Yes, the archives says they cannot conduct a search because they don't have the resources and the records that were transmitted to the archives were not properly accompanied by indices. I know, but so then how do we know whether really anything's missing here, as opposed to maybe somebody did a bad job of indexing things? Well, we can speculate as to whether or not something's missing, but I would suggest, Your Honor, that in the search, the government has said that they have- they named these rescue operations, there are like a dozen of them or over a dozen of them. Those are CIA names. Now, if they wanted to find these records, they should have used their own code names to conduct the search. And we talked a little bit about imagery. In 20 years, they have not produced a single image. And these images are very, very probative. They show codes that only the POWs knew that were on the ground. And there we have evidence of the record, there were at least 20 of those picked up, and not a one has been produced. And I would ask the court to consider this in the wherefore clause at the end of our brief. We asked them to list whether or not- to include in their declaration whether or not they- their search would include repositories of communications with a number of other agencies. Now, it would seem to me they can answer that yes or no without any implications for privacy or- FOIA is not a right to interrogate the government with deposition questions. You don't get to ask questions, you just get to ask for documents. Yes, that is correct. I don't get to ask- take depositions. We could ask for leave to interrogatories, which are generally limited to the search, and that's exactly what we're asking. Why can't they say whether or not they search repositories of- of- of communications with other- with other three-letter agencies? I think that they- they could do that and without any implication for national security. Another thing that- that they should be able to say whether or not they- their search would include the repositories of presidential daily briefs. There are many, many, I assume, presidential daily briefs that are having to do with this particular issue. And they have produced, for the last 50 years, one presidential daily brief. It's just so, I think, kind of ludicrous to suggest that they don't have the records that we are- are seeking. And their record of recalcitrance is- is 50 years old. In- in- the- the- the government talked about their- their decennial review. In- and there's a- an area of the brief where we talk about what they produce is up to, I think, 43 years later, after the- the- the record was created, that they released it after their decennial review. The last one, of course, was in 2015. So, I suggested to the court that there are many, many deficiencies in the defendant's both production and bond index. Thank you. Thank you. We'll take a brief recess.
judges: Henderson; Millett; Childs